KLUMP, APPELLANT, *v.* KLUMP, APPELLEE.

(No. 4751—Decided February 8, 1954.)

*Mr. Harold T. Hanley,* for appellant.
*Mr. Max Britz,* for appellee.

CONN, J. Plaintiff brought an action in the Common Pleas Court against defendant, wherein she alleged that defendant had been guilty of extreme cruelty and gross neglect of duty towards her. Plaintiff prayed for divorce and alimony and that she be awarded the care, custody and control of the minor children of the parties, together with a reasonable amount for support and maintenance.

In her petition, plaintiff alleged that the parties were married on February 27, 1943; that two children, Sharon, born March 4, 1944, and Donald, born September 7, 1949, were the only issue of said marriage; that defendant is the owner of 10 acres of land fronting on Lewis avenue on which he owns and conducts a business known as The Lewis Avenue Driving Range; that such land, improvements thereon, and other personal property were acquired since their marriage; that plaintiff has been employed for wages and her earnings have been used in the maintenance of the household and the acquisition of such property; and that plaintiff assisted defendant in operating the driving range.

The defendant in his answer admits that the parties are the owners of such property; admits the allegations relative to marriage and children; denies generally the remaining allegations, and alleges that plaintiff has been guilty of gross neglect of duty and extreme cruelty and has separated from defendant several times.

The trial court found that defendant had been guilty of gross neglect of duty towards plaintiff and entered judgment in her favor, awarding her a divorce from defendant and a judgment for "alimony and property division," and, also, awarding plaintiff the sole custody and control of the minor children.

The court found that the value of the Lewis avenue property and improvements was $15,000; that there

was a mortgage lien on this property of $3,000; and, after deducting $6,000 as ''non-coverture'' funds, that ''plaintiff be decreed as alimony and property division $3,000 * * *'' and the household goods; and that each party have and retain the automobile then in possession. The court decreed further that defendant pay the balance due of $230 on the refrigerator and stove, and pay plaintiff the sum of $25 per week for the support of the minor children and, also, pay court costs and the sum of $150 for plaintiff's attorney.

In plaintiff's appeal to this court, she assigns as errors of the trial court, briefly restated, the following:

1. That the valuation of the land and improvements described in the petition is contrary to and manifestly against the weight of the evidence; error in failing to place a valuation on the 1951 Ford automobile owned by defendant and error in not requiring defendant to repay plaintiff's father money advanced by him for rent of the dwelling house occupied by defendant's family, in the amount of $350.

2. That the court erred in deducting the so-called noncoverture funds from the value of the real estate and in failing to award plaintiff reasonable and proper alimony based on a division of the property acquired during the marriage of the parties, pursuant to provisions of the statutes of Ohio.

3. That the court erred in overruling plaintiff's motion for a new trial, particularly on the ground of defendant's misconduct in misrepresenting to the court that he did not receive any distributive share of his father's estate and also that he was indebted to his father, which had been deducted from his distributive share, and also in debt to his sister for the entire amount to which he was entitled as an heir of his father.

Plaintiff's appeal is on questions of law and fact. As this is not a chancery case, it can not be appealed

on questions of law and fact, and the court, therefore, on its own motion, retains the appeal as one on questions of law.

In giving consideration to the merits of plaintiff's appeal, we shall refer to the evidence somewhat in detail as disclosed in the bill of exceptions and the depositions taken in support of plaintiff's motion for a new trial.

Defendant's charges against plaintiff of gross neglect of duty and extreme cruelty, made in his answer under oath, were not supported by any evidence. On the other hand, the evidence affirmatively shows that during the entire period of the marriage of the parties of nearly 10 years, plaintiff has performed and sacrificially observed her marital duties, and did so under circumstances at times when the necessaries of life, such as food, clothing and shelter were not provided by defendant, although at all times he was well able to do so.

The evidence in this case shows abundantly that defendant has been guilty of gross neglect of duty toward plaintiff and the children of the parties, particularly in that defendant habitually sought the society of persons other than the members of his family, including women; that he spent much of his time playing golf, gambling and being away from home at night; and that the protests of plaintiff were unavailing, though frequently made.

The evidence shows also that plaintiff was obliged to seek employment and work for wages, excepting those times when too ill to do so, in order to provide the necessaries of life for herself and family, in addition to the work of caring for her home and children, and at times was obliged to seek help from her parents to meet rental payments and for food and clothing.

The evidence discloses that over the years the driv-

ing range was not very profitable, that defendant continued season after season to operate it, that out of season he worked where he could get work, and that he was capable of earning $2.25 per hour.

Following the final separation of the parties in January 1952 the defendant paid plaintiff the sum of $15 per week towards the support of the children and, until this action was commenced and during its pendency, defendant paid $22 per week pursuant to court order. During all this time plaintiff was employed and her take-home pay was approximately $46 per week. At the same time, plaintiff paid a maximum of $11 to $12 per week for domestic help in caring for the children while she was at work. The weekly expenses for maintaining the home, including rent, heat, light, food and other necessary expenses and not including clothing and medical services, averaged slightly more than $60 per week. It is apparent that the amount paid by defendant following the final separation of the parties was not adequate to meet the living expenses of his family.

Defendant testified that he purchased the ten acres of land on a cash basis for $9,000; that he built a one-room building thereon at a cost of $2,100; that he installed lights and other equipment and also built a fence at a cost of $6,500, for which he is still indebted; that he had borrowed $2,600 from his father; and that he owed the bank at Petersburg approximately $2,800 on a note and mortgage. He testified further that he did not receive anything out of his 'ather's estate, as the amount he owed his father for borrowed money and the amount he owed his sister for care following his mother's death when he was nine years of age, was taken out, that it was agreed his brother and sister should get the rest of his share, and that he did not receive anything.

The statutes of Ohio define the respective rights and

duties of the husband and wife, growing out of their marital relationship. We call attention to those which appear to be applicable.

Section 8002-3, General Code (amending Section 7997, General Code, 1951 [Section 3103.3, Revised Code]), provides:

"The husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able. If he neglects to support his wife, any other person, in good faith, may supply her with necessaries for her support, and recover the reasonable value thereof from the husband unless she abandons him without cause."

The statutory definition of the marital obligations of the husband provides the basis upon which an award of alimony to the wife may be made, upon breach of his obligations and duties, as specifically outlined in related sections of the Code, and which are *in pari materia*. The mandatory provisions of this statute as to the primary duty of the husband to support his wife and minor children are emphasized by the concluding provision of the above section.

It does not appear to have been the intention of the Legislature, when it placed in the statute the above proviso, which imposes on the wife the duty to assist the husband to support herself and the minor children, if he is unable to do so, to modify or dilute the primary and mandatory obligation of the husband to provide such support; nor does it have the legal effect of creating a joint liability of the parties. *Young* v. *Young*, 7 C. C. (N. S.), 419, 18 C. D., 179; *Kintner* v. *Kintner*, 78 Ohio App., 324, 65 N. E. (2d), 156.

The character of the husband's obligations under the statute and the somewhat limited nature of its extent where a definite court order has been entered is illustrated in the following cases:

In *Fickel* v. *Granger,* 83 Ohio St., 101, 93 N. E., 527, 32 L. R. A. (N. S.), 270, it was held that the obligation of the husband to support his wife grows out of the marriage relation and continues *after legal separation.* A similar holding appears in *Smith* v. *Smith,* 86 Ohio App., ±79, 92 N. E. (2d), 418. See, also, *State, ex rel. Wright,* v. *Indus. Comm.,* 141 Ohio St., 187, 47 N. E. (2d), 209.

It has been held also that where the wife has been given the custody of the minor children and an order entered requiring the husband to pay a definite amount for support, he may stand on the order made, unless modified, and is not chargeable for medical expenses incurred for the minor children, or even expenses incurred by reason of the last illness and funeral, in event of death. *Dodye* v. *Keller,* 29 Ohio App., 114, 162 N. E., 750; *Harker* v. *Wolff,* 42 Ohio App., 540, 182 N. E., 592.

See, also, case note, 7 A. L. R. (2d), 491.

It follows that unless the mandate of the statute is observed, the primary obligation of providing sustenance and shelter to the family is shifted from the husband to the wife.

We call attention to the provisions of the Code which are related to the section under consideration (Section 8002-3, General Code). These sections specifically define the duties and obligations of the husband where the wife is entitled to alimony. We quote:

Section 8003-17, General Code (Section 3105.18, Revised Code), provides:

" * * * The court may allow such alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either at the time of the decree. Such alimony may be allowed in real or personal property, or both, or by decreeing either such sum of money pay-

able in gross or by installments, as the court deems equitable.''

Section 8003-19, General Code [Section 3105.18, Revised Code], provides:

''Alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or installments, as the court deems equitable.''

It is apparent that the last section quoted above is substantially the same as the closing paragraph of Section 8003-17, General Code. The provisions of these sections have been combined and, with slight changes in the phrasing, form Section 3105.18, Revised Code, and appear to be applicable to both alimony and divorce proceedings.

In the amendment of Sections 11990 and 11991, General Code, the language omitted and added appears to evince an intention on the part of the Legislature to clarify the statutes only and not to soften the mandatory duty which is imposed on the husband by statute (Section 8002-3, General Code) to provide support for his wife and minor children. In other words, the legislative purpose does not appear to have been enfeebled by these amendments to the statutes, and it remains the imperative duty of the trial court to award alimony to the wife where it has been adjudged that the proximate cause of the separation or divorce has been the breach of the marital contract by the husband. The following authorities give consideration to the obligations of the husband: *McGinnis* v. *McGinnis*, 9 Ohio App., 81; *Coleman* v. *Coleman,* 37 Ohio App.. 474, 175 N. E., 38; *Miller* v. *Miller,* 78 Ohio App., 381, 66 N. E. (2d), 278.

Alimony is defined in 14 Ohio Jurisprudence, 459, Section 69, as follows:

''Alimony, which signifies literally nourishment or sustenance, is the allowance which a husband may be

compelled to pay to his wife for her maintenance when she is living apart from him, or has been divorced * * *.

"Alimony under the Ohio statutes comprehends a division of property accumulated by the joint efforts of the husband and wife during their domestic partnership, as well as an allowance for separate maintenance and support in the nature of a pension. The term 'alimony' is not applicable to an allowance made for the support and maintenance of minor children."

Alimony is based on considerations of equity and public policy, and grounded on statutory obligations that the husband must support his wife and children. These obligations continue after separation and after a divorce granted the wife by reason of the husband's aggression, as in the instant case. *Fickel* v. *Granger,* 83 Ohio St., 101, 93 N. E., 527, 32 L. R. A. (N. S.), 270; *Smith* v. *Smith,* 86 Ohio App., 479, 92 N. E. (2d), 418.

Where the husband has been found guilty of aggression and a divorce granted to the wife, alimony may be awarded out of future personal earnings of the husband and made payable in weekly payments, and such award may be made in addition to an allowance out of his personal and real property. *Lape* v. *Lape,* 99 Ohio St., 143, 124 N. E., 51, 6 A. L. R., 187; *Thompson* v. *Thompson* (Ohio App.), 110 N. E. (2d), 17.

It was held in *Fisher* v. *Fisher,* 78 Ohio App., 125, 64 N. E. (2d), 328, that "an equitable distribution of money and property acquired by the parties during their married life," where a divorce is granted the wife, is not an award of alimony even though it is so designated. In the opinion of the court, at page 127, Judge Miller put his finger on the statutory duty imposed on the trial court, in clear and discriminating language, as follows:

"The court could well have made the property division which is carried in the entry if the decree had been granted to the husband for the wife's aggression,

because such division was nothing more or less than an equitable division of the property. Alimony begins when the court requires the payment to be made to a party from the aggressor's property, money or earnings.''

The following authorities throw some light on the issues herein: *Coffman, Admr., v. Finney, Admr.,* 65 Ohio St., 61, 61 N. E., 155, 55 L. R. A., 794; *Shively* v. *Shively,* 88 Ohio App., 7, 95 N. E. (2d), 276; and *Young* v. *Young, supra.*

It is pertinent to note that where a divorce has been granted to the wife and personal service is had on the husband, the judgment rendered is *res judicata* as to all issues existing between the parties, including alimony. *Stephenson* v. *Stephenson,* 54 Ohio App., 239, 6 N. E. (2d), 1005.

Plaintiff testified in detail as to the cost and expense in maintaining the home for herself and children, which was not challenged by the husband. It is clear that plaintiff's income from her daily labor, together with the weekly payments made by defendant for the children, are inadequate to meet these necessaries. It follows that the lump sum award will be exhausted in a relatively brief time.

Where the husband chooses the society of third persons, including women, in preference to his own wife and children, he assumes the risk of his immaturity and the voluntary breach of his marital vows and obligations, and does not thereby accomplish a repeal of the statutes. In other words, when the husband has been adjudged guilty of misconduct and his wife obtains a divorce and custody of the minor children of the parties, the legal as well as the moral obligation of support and maintenance remain essentially the same as during the period when the husband faithfully recognized his marital obligations.

Upon the hearing on the motion for a new trial, plaintiff introduced evidence by way of deposition, tending to disclose facts wholly inconsistent with the testimony of defendant given during the trial, relative to his interest in his father's estate. As already pointed out, defendant testified that he did not receive anything from said estate. However, documentary evidence in relation to the settlement of the estate, filed by the administrator thereof, shows that the defendant received the sum of $11,314.78, a "1/3 share of estate." This evidence is in the form of a voucher signed "Donald A. Klump." Further corroborative evidence was submitted by way of a cancelled check, issued by the administrator of said estate—"5-7-53"—payable to the order of "Donald A. Klump" for the amount of $11,314.78. This check was endorsed by the payee and also by J. S. Whitman, the brother-in-law of defendant.

The evidence shows further that the check was deposited in the joint savings account of J. S. Whitman and Claire Whitman, the latter being the sister of defendant, and the former, the sister's husband. It appears further that no claim or claims were made by the administrator of the father's estate against defendant for payment of loans, but it does appear that the defendant was paid by check one-third of the estate, there being three heirs.

The sister testified by deposition that she had rendered services to defendant from the time he was nine years old and following the death of his mother, and that defendant's father was not able to pay her. She stated also that she had no contract, either oral or written, with defendant and no book account, as evidence of the alleged obligation.

It was disclosed further by the deposition of J. S. Whitman, that he had forwarded to defendant's at-

torney $4,000 for the purpose of paying court costs, attorney fees and the $3,000 awarded to plaintiff as alimony.

This brief survey of this impeaching evidence brought in by deposition is materially inconsistent with the testimony given by defendant on the trial, and sustains a proximate relationship to the duty of the trial court in granting plaintiff reasonable alimony and entering judgment for same out of the personal and real property of defendant. The testimony of defendant relative to his father's estate tended to mislead the trial court and was constructively fraudulent as against the plaintiff's right to fair and reasonable alimony. It should be noted that the amount of the check received by defendant from the administrator of his father's estate was more than ample in amount to discharge all his indebtedness, so far as disclosed by the record.

The crude and ill-advised plan of deception adopted by defendant, aided as it was by the temerity of his sister and her husband, was calculated to deceive the court and defraud the plaintiff. We come to the conclusion that the plaintiff is entitled to a new trial by reason of what appears to be the false and misleading testimony of defendant, and that the trial court erred to the prejudice of plaintiff in overruling her motion. In view of the conclusion reached, further discussion of assigned errors becomes unnecessary.

It is ordered that the case be reversed and a new trial granted as to the issue of reasonable alimony to which plaintiff is entitled out of the property of defendant, or out of his future earnings, or both.

The judgment is reversed, and the cause is remanded.

*Judgment reversed.*

Fess and Deeds, JJ., concur.